## FORD et al. v. JEFFERSON COUNTY.

Where defects are corrected by an amended petition, the overruling of the demurrer in reference to those defects, is waived by answering over.

An amended answer supersedes the original, and waives all objection to the demurrer affecting such original answer.

A county judge does not possess the power to settle with the treasurer and collector for the state revenue collected by him, nor to discharge him, and his securities from their liability to the state upon the bond required by the revenue law of 1847.

The cancellation of a bond by an officer not authorized, is no evidence of satisfaction.

Instructions, irrelevant to the issue, should not be given.

### Appeal from Jefferson District Court.

*Opinion by* GREENE, J. This action was commenced by the commissioners of Jefferson county, for the use of the state of Iowa, against Anson Ford and his sureties, on his bond as treasurer and collector. The original petition was filed in February, 1852, and laid the damages at $2000, for moneys collected by Ford, in his official capacity, from August 1849 to August 1851.

Demurrers filed to the original and first amended petition were respectively overruled and confessed, and a second amended petition was filed. To this petition, defendants demurred and answered. This demurrer was overruled, and thereupon the plaintiff demurred to defendants' answer, and the demurrer was sustained. An amended answer was filed. To this also the demurrer was sustained. Thereupon a jury was empanneled and assessed the damages at $930,72. Motions for a new trial and in arrest

of judgment were filed and overruled. To these procedings several errors are assigned, which we will briefly consider.

1. The first two errors assigned, objected to the decision of the court upon the demurrers to the original and amended petitions. But as they answered the second amended petition, and as plaintiff confessed and corrected the deficient points, the defendants cannot now take advantage of that ruling. If the petitions were defective, those defects were corrected by the second amended petition. If the court ruled erroneously upon the first two demurrers, the error was waived when defendants answered over. It is conceded by all courts, that defects in form are cured by pleading over, and many courts go so far as to hold that defects, both formal and material, are thus cured. But no court could be so blinded as to decide that when substantial defects are corrected by an amended petition, answering over would not waive all objection to the ruling upon the demurrer in reference to them.

2. It is claimed, that the court erred in sustaining the demurrer to the answer, and also in sustaining the demurrer to the amended answer. The appellants are estopped from saying that the court erred in sustaining the demurrer to the answer, when they themselves virtually confessed that the demurrer was well taken by filing an amended answer. This showed an acquiescence in the ruling of the court against the sufficiency of the original answer. If they had confidence in its legal sufficiency, why did they not rest upon it? Why supersede it by an amended answer? Upon the same principle that pleading over, after a demurrer, amounts to a waiver of all objection to the overruling of the demurrer, so, the filing of an amended answer should be regarded as a waiver of all ruling in reference to the original answer. It should be considered as withdrawn. It is in effect superseded by the amended answer and should not be considered as in court. Consequently all decisions made in reference to such withdrawn or dis-

carded pleading should be considered as outside of the case and not legitimately before the court.

3. Did the court err in sustaining the demurrer to the amended answer? This question involves the law and merits of the case. The defense set up by this answer, is, that the bond upon which suit was brought was satisfied, and was cancelled by Moses Black, as county judge of Jefferson county, on the 19th September, 1851. The demurrer admits the cancellation as alleged, but denies the authority of the county judge to make such settlement and cancellation, so far as the rights of the state are concerned, and claims that no act of the said judge could impair the rights of the state to recover.

The answer confesses the allegations of the petition, but seeks to avoid them by introducing the new matter of settlement and cancellation. The demurrer admits the settlement and cancellation, but denies their legal validity and the authority under which they were made. This brings the controversy down to a naked proposition of law. The power of the county judge to close a settlement with the treasurer and collector for the revenue collected by him for the state. The court below decided against this power, in sustaining the demurrer.

In August, 1849, when Ford came into office as treasurer and collector, the revenue act of February 2, 1847, was in force. This act provides that, "the county recorder of each county shall be *ex officio*, the treasurer of the county and shall qualify as hereinafter provided." The qualification is thus prescribed. That he shall file with the clerk of the district court, a bond payable to the county commissioners, &c., conditioned for a faithful dicharge of his duties according to law, and for the payment of all moneys coming to his hands as treasurer, which bond shall operate as, and have the effect of a judgment confessed, until a final settlement with the board of county commissioners and auditor of state." Laws of 1847, 141.

This act also declares; "that on or before the 15th day

of February, of each year, the treasurer shall pay into the
state treasury the amount of money collected by him, and
that he shall collect the delinquent taxes of the preceding
year, and shall pay the same over in like manner, and also
that he shall be charged with the amount of state tax
according to the copy of the assessment list returned to the
auditor of state, and *shall only be released from the obliga-
tion of his bond when the whole amount shall have been
paid in, or satisfactorily accounted for.*"

As this case turns entirely upon the construction given
to the statute, we have quoted largely from it. The
requirements are so explicit, and the duties and liabilities
of the treasurer and collector, are made so apparent, that
comment would hardly seem necessary. The statute and
conditions of the bond are not satisfied by a final settle-
ment with the county commissioners alone. There must
also be a settlement with the auditor of state. There must
not only be a full and final settlement with both of those
officers, before the obligors are released from the bond,
but it must also appear that the whole amount of state tax
had been paid in, or satisfactorily accounted for. To
whom is this payment or satisfactory account to be rendered
so far as the state revenue is concerned? The statute
explicitly answers, to the " auditor of state." It would be as
reasonable to say that a city officer, or a private individual
is authorized to secure such payment for the state, as to
say that the board of county commissioners or the county
judge is thus authorized.

The county judge derives his powers entirely from the
Code. But the Code confers no authority upon that officer
to receive money or make settlements for the state. He
is empowered to audit and settle accounts connected with
the revenue of his county. Beyond his county he cannot
go. He has no more right to act for the state of Iowa
than for any other state of the Union. In a word, he can
exercise no other powers than those expressly conferred
by statute. The jurisdiction of a county court is special

and limited. It is confined to the usual powers of a judge of probate and county commissioners, and those powers are specifically defined by law. Code, § § 103 to 149.

It would be a monstrous stride in extra judicial assumption, to say that a county judge can be justified in acting as auditor and treasurer of state.

We conclude then, that the county judge did not possess the power to settle with the treasurer and collector for the state revenue collected by him, nor to discharge him and his securities from their liability on the bond. It therefore follows, that the court below did not err in sustaining the demurrer to defendants' answer.

4. The remaining errors assigned are disposed of by the decision upon the last point. But as counsel for appellants attach great importance to the instructions asked by them and which were refused by the court below, it may be well to give them a brief notice. The two instructions referred to, are in reference to the cancellation of the bond, and assume that such cancellation by the county judge, amounts to *prima facie*, or at least presumptive evidence of satisfaction. The court very properly refused these instructions for two reasons:

1. Because the cancellation of a bond by an officer or person not authorized by law to do so, is no evidence of satisfaction. Any further discussion of this self evident proposition seems superfluous.

2. Because the court should refuse to give instructions which are irrelevant to the issue, [a] The only matter submitted to the jury was the assessment of damages upon the bond. All other questions in the case had been fully determined by the pleadings, and the decision upon the demurrer to the amended answer. The legal effect of the cancellation had been fully determined by the court, and was in no way subject to the action of the jury.

As the amount of the damages, was the only question of fact in dispute, and as the instructions asked, had not

[a] *Packer* v. *Cockayue,* 3 G. Greene, 111 ; *Tryon* v. *Oxley,* ib., 289.

the slightest application to that question, they were very properly refused.

Judgment affirmed.

*Wright, Slagle* and *Acheson,* for appellants.

*Wm. Penn Clarke* and *Charles Negus,* for appellee.